IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

LARVON LANGLEY,

   Petitioner

Criminal No.: ELH-12-0311
Related Civil No.: ELH-19-2397

**MEMORANDUM**

Larvon Langley, the self-represented Petitioner, has filed a post-conviction petition under 28 U.S.C. § 2255 (ECF 84), asserting that he is "'actually in [sic] innocent' of being an Armed Career Criminal, in light of the June 21, 2019, decision of the United States supreme Court in *Rehaif v. United States*. . . ." *Id*. at 1. On his behalf, the Office of the Federal Public Defender ("FPD") also filed a motion to vacate under § 2255 (ECF 94), claiming that defendant's conviction under 18 U.S.C. § 922(g) must be vacated pursuant to *United States v. Rehaif*, ___ U.S. ___, 139 S. Ct. 2191 (2019). However, the FPD subsequently moved to withdraw as counsel. ECF 143. By Order of March 11, 2022 (ECF 144), I granted the FPD's motion. Nonetheless, Langley seeks to pursue the Petition. ECF 147. Therefore, I shall refer to ECF 84 and ECF 94 collectively as the "Petition."

The government opposes the Petition. ECF 149. Among other arguments, it believes that Langley "is arguing that his conviction for possession of a firearm by a felon is defective in light of *Rehaif*, because the jury [sic] was not instructed that the government was required to prove that Langley was aware of his status as a felon." ECF 149 at 1.[1]

No hearing is necessary in this matter. For the reasons that follow, I shall dismiss and deny the Petition.

---

[1] Defendant pleaded guilty; jury was ever seated in this case.

1

I.      **Factual and Procedural Background**[2]

Pursuant to a Plea Agreement dated October 22, 2012 (ECF 27), Langley entered a plea of guilty on December 6, 2012 (ECF 26) to Count One of an Indictment charging him with possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1).

In the Plea Agreement, the parties contemplated a base offense level of 24. ECF 27, ¶ 6(a). But, there was no agreement as to the defendant's criminal history. *Id.* ¶ 6(c). Moreover, the defendant was advised in the Plea Agreement that, if he qualified as an Armed Career Criminal, he faced a mandatory minimum sentence of 15 years' imprisonment, with a maximum of life imprisonment. *Id.* ¶ 3.

The Plea Agreement included a stipulation of facts. *Id.* at 9. It reflects that on April 18, 2012, law enforcement executed a search warrant at defendant's residence while defendant was home. *Id.* The officers recovered a .40 caliber semi-automatic pistol and twelve rounds of .40 caliber ammunition, as well as heroin located approximately four feet from the pistol. *Id.* In addition, heroin was recovered from defendant's person. *Id.* After defendant was informed of his *Miranda* rights, he "admitted that he had drugs on his person and that the firearm and heroin recovered in the residence belonged to him," and that the firearm and ammunition affected interstate commerce. *Id.*

The Presentence Report (ECF 34, "PSR"), reflected that defendant had a long criminal history, dating to 1987. For the purpose of calculating Langley's criminal history, however, not all of his prior convictions scored points. With respect to the matter of Langley's Armed Career Criminal status, the PSR reflected the following prior qualifying convictions, all in the Circuit

---

[2] I incorporate the factual and procedural summary set forth in my Memorandum Opinion of April 22, 2021 (ECF 132), granting, in part, Langley's motion for compassionate release.

Court for Baltimore City.

Paragraph 40 of the PSR indicated that in 1994 Langley was convicted of possession with intent to distribute heroin, for which he received a sentence of five years' imprisonment. Paragraph 43 of the PSR reflected that Langley was again convicted of possession with intent to distribute heroin. The offense occurred in May 2001, and in June 2002 Langley was sentenced to a term of 10 years' incarceration. *Id.* In ¶ 46, the PSR referenced an offense that occurred in August 2001; in June 2002, Langley received a concurrent ten-year sentence for possession with intent to distribute both cocaine and heroin. *Id.* And, ¶ 50 of the PSR reflected that Langley received a five-year sentence, without parole, for possession of a handgun by a convicted felon, which occurred in August 2001. That offense, however, did not score any points, nor was it relevant to the determination of Armed Career Criminal status. *See id.*

In sum, the PSR reflected that Langley had three prior and distinct convictions for serious drug offenses, all of which occurred when he was over the age of eighteen. The underlying offense to which the defendant pleaded guilty—felon in possession—coupled with defendant's three prior qualifying offenses, led to his designation in the PSR as an Armed Career Criminal under § 4B1.4 of the Sentencing Guidelines ("U.S.S.G." or "Guidelines"). *See* ECF 34, ¶¶ 22, 54, 55.

The PSR reflected a final offense level of 31 (ECF 34, ¶ 24), and a criminal history category of VI. *Id.* ¶ 56. The Guidelines called for a sentence ranging from 188 to 235 months of imprisonment. *Id.* ¶ 74. And, as an Armed Career Criminal, defendant faced a congressionally mandated minimum sentence of 180 months (15 years).

Sentencing was held on November 13, 2013. ECF 54; ECF 55; ECF 56. At the time of sentencing, Mr. Langley was forty-three years of age. *See* ECF 34 at 1.

The Court determined that the defendant qualified as an Armed Career Criminal. *See* ECF 56. Pursuant to 18 U.S.C. § 924(e)(1), the Court imposed the mandatory minimum sentence of 180 months' incarceration (ECF 55), with credit for time served from April 18, 2012 until January 8, 2013, and from August 31, 2013 until September 2, 2013. *See* ECF 123-1 at 4; ECF 34. Defendant was allowed to surrender, and was directed to do so on January 6, 2014. ECF 55 at 2. He has been incarcerated since that date.

In August and November of 2015, the Court received correspondence from Langley, complaining that he was unlawfully sentenced under the Armed Career Criminal Act ("ACCA"). *See* ECF 63; ECF 64; ECF 65. For example, he complained that one of the charges used to enhance his sentence "was a simple possession of a fire arm [sic] that was used as an 4B1.4 offence [sic] that should not have been used against [him]." ECF 63 at 1. Defendant cited, *inter alia, Johnson v. United States*, 576 U.S. 591 (2015), and *Stinson v. United States*, 508 U.S. 36 (1993), to support his position. *Id.*

In an Order of January 22, 2016 (ECF 67), I gave notice that I construed ECF 64 as a motion to vacate under 28 U.S.C. § 2255, and directed the government to respond. Langley did not challenge that decision. By Memorandum (ECF 77) and Order (ECF 78) of July 15, 2016, I denied that petition. I found Langley to be an Armed Career Criminal and also noted his "long adult criminal history, dating to 1987" and that he "had three prior and distinct serious drug offenses." ECF 77 at 2, 6, 7.

As noted, on August 19, 2019, Langley filed a motion to vacate his sentence under 28 U.S.C. § 2255, premised on *Rehaif v. United States*, ___ U.S. ___, 139 S. Ct. 2191 (2019). ECF

4

84. As indicated, the FPD filed a supplemental § 2255 motion on behalf of Langley. ECF 94. The Petition was stayed, pending resolution of certain appellate cases that were expected to provide further guidance. *See* ECF 132 at 1 n.1.[3]

In the interim, on May 11, 2020, Petitioner moved for compassionate release. ECF 87. By Memorandum Opinion (ECF 132) and Order (ECF 133) of April 22, 2021, as well as an Amended Judgment (ECF 135), I reduced Petitioner's sentence from 180 months (15 years) to 150 months (12.5 years).

On March 11, 2022, the FPD filed a motion to withdraw as counsel with respect to the Petition, presumably in light of the Supreme Court's decision in *United States v. Greer*, ___ U.S. ___, 141 S. Ct. 2090 (2021). ECF 143. The FPD indicated that correspondence was sent to Langley, inquiring as to whether he wished to voluntarily withdraw the Petition, but the FPD had not received a response. *Id.* at 2. I granted the FPD's motion the same day. ECF 144.

Also on March 11, 2022, this Court issued an Order directing Langley to show cause by April 11, 2022, why the Court should not dismiss the Petition, without prejudice. ECF 145. No response was received by April 11, 2022. *See* Docket. Therefore, by Order of April 15, 2022, I dismissed the Petition, without prejudice, and closed the related civil case. ECF 146. However, based on correspondence received from Petitioner in June 2022 (ECF 147), I found good cause to vacate my Order of April 15, 2022. ECF 148. And, I reopened the Petition by Order of August 11, 2022. *Id.*

---

[3] *Rehaif*-related habeas petitions were initially held in abeyance by judges of this Court, while the government sought further review of the Fourth Circuit's decision in cases such as *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020). In that case, the Fourth Circuit concluded that *Rehaif* errors are structural and require automatic vacatur. The following year, the Supreme Court decided *Greer v. United States*, ___ U.S. ___, 141 S. Ct. 2090 (2021), and reversed the Fourth Circuit's decision in *Gary*.

## II. *REHAIF* AND *GREER*

In *Rehaif*, 139 S. Ct. 2191, the Supreme Court held that in felon-in-possession cases, the government is required to prove not only that the defendant knew he possessed a firearm, but also that he knew he was a felon when he possessed the firearm. *Rehaif*, 139 S. Ct. at 2199–2200. However, the government need not show that the defendant knew he was prohibited from possessing a firearm. Rather, it must demonstrate that he "knew he belonged to the relevant class of persons barred from possessing a firearm," *i.e.*, that he knew he had been convicted of a crime punishable by a term of imprisonment of more than one year. *Id.* at 2200; *see also United States v. Moody*, 2 F.4th 180, 197–98 (4th Cir. 2021).

*Greer v. United States*, ___ U.S. ___, 141 S. Ct. 2090 (2021), followed *Rehaif*. In that case, both Greer and Gary were convicted under 18 U.S.C. § 922(g). *Id.* at 2095. A jury convicted Greer following a trial, while Gary had pleaded guilty. *Id.* at 2095–96. Both convictions occurred prior to *Rehaif*. After *Rehaif*, both defendants argued that their convictions must be vacated. In particular, Greer claimed the district court did not instruct the jury that the defendant had to know he was a felon, and Gary claimed that the district court failed to advise him of the knowledge- of-status element prior to accepting his plea. *Id.* at 2096.

The Supreme Court rejected those contentions. It held that neither defendant was entitled to relief on plain-error review for their unpreserved *Rehaif* claims. *Id.*

Of relevance, the Court rejected the contention that *Rehaif* errors are "structural" and require vacatur in every case. *Id.* at 2100. According to the Court, to prevail on plain-error review, a defendant must make "a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon." *Id.* If the defendant

6

makes such an argument or representation, "the court must determine whether the defendant has carried the burden of showing a 'reasonable probability' that the outcome of the district proceeding would have been different." *Id.*

Notably, the Court indicated that a defendant who was, in fact, a felon when he possessed the firearm will face "an uphill climb" in trying to satisfy this burden. The Court reasoned, *id.* at 2097 (internal citation omitted):

> The reason is simple: If a person is a felon, he ordinarily knows he is a felon. Felony status is simply not the kind of thing that one forgets. That simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon. A defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty.

Furthermore, the Court made clear that an appellate court conducting plain-error review of a *Rehaif* claim may examine "relevant and reliable information from the entire record—including information contained in a pre-sentence report." *Id*. at 2098.

Applying this standard, the Court concluded that Greer failed to meet his burden of showing a "reasonable probability" that a properly instructed jury would have acquitted him because his presentence report indicated that he had several felony convictions; he stipulated at trial to having a qualifying conviction; and he did not identify any evidence that he would have presented at trial to show that he was unaware of his status as a felon. *Id*. at 2097–98. For the same reasons, the Court determined that Gary failed to meet his burden of showing a "reasonable probability" that he would not have pled guilty if he had been advised of the knowledge-of-status element. *Id.*

## II. Discussion

Under 18 U.S.C. § 922(g)(1), it is illegal for a felon to possess a firearm. Section 924(e)(1) of 18 U.S.C. states, in part: "In the case of a person who violates § 922(g) of this title

and has three previous convictions by any court referred to in § 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years. . . ."

Section 924(e)(2)(A) defines the term "Serious Drug Offense."  As defendant's prior offenses are all under Maryland law, § 924(e)(2)(A)(ii) is relevant.  It defines a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"

Thus, in order to qualify as a serious drug offense, a defendant's prior Maryland conviction must have prescribed a potential maximum term of imprisonment of at least ten years.  Maryland Code, Criminal Law Article ("C.L.") §§ 5-602 and 5-608 are relevant.  C.L. § 5-602 prohibits the felony offenses of distribution of a controlled dangerous substance ("CDS") and possession with intent to distribute CDS.  C.L. § 5-608 establishes various penalties, and sets a penalty of imprisonment not exceeding 20 years for the first offense under § 5-602 if it involves a Schedule I or Schedule II narcotic drug.  C.L. § 5-101(f) defines "controlled dangerous substance."  The drugs that appear on Schedule I and Schedule II are set forth in C.L. § 5-402 and C.L. § 5-403, respectively.  Heroin is found in Schedule I, at C.L. § 5-402(c)(xv).  Cocaine is designated as a Schedule II substance, at C.L. § 5-403(b)(3)(iv); *see also Hurt v. State*, 2015 WL 5926870, at *4 (Md. Court of Special Appeals Sept. 4, 2015).

These matters are relevant to the merits of the *Rehaif* issue.  But, I cannot reach the merits.  This is because Langley previously filed a post-conviction petition in 2015, which was denied on July 15, 2016.  *See* ECF 63; ECF 77.  Thus, Langley's Petition is a second petition.  But, as the

government observes (ECF 149, at 6-7), the Petition fails because Langley previously sought post-conviction relief from this Court and has not obtained authorization from the Fourth Circuit to file another petition, as is required.[4]

Under 28 U.S.C. § 2244(b)(3)(A), "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." This requirement is jurisdictional. *See United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003), abrogated in part on other grounds by *United States v. McRae*, 793 F.3d 392, 400 (4th Cir. 2015). Under 28 U.S.C. § 2255(h), "second or successive motion[s]" are permissible only when they have been "certified . . . by a panel of the appropriate court of appeals to contain" either "newly discovered evidence" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

As the Fourth Circuit explained in *In re Goddard*, 170 F.3d 435, 437 (4th Cir. 1999), the successive habeas bar exists to ensure that a defendant is afforded one opportunity to attack his sentence collaterally. The limitation is important to prevent serial filings raising countless claims. Because the instant Petition is a successive petition to ECF 63, and because the Fourth Circuit has not authorized the filing of a successive petition, the Petition must be dismissed for lack of jurisdiction.[5]

---

[4] I have not seen such an authorization on the Docket.

[5] Even if Langley had sought authorization from the Fourth Circuit, there likely is no basis for the Court to grant it. As discussed above, appellate courts may authorize a successive petition when the defendant presents "newly discovered evidence" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). Langley presents no new evidence.

### III. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post conviction claim.

A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).[6]

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). As indicated, a COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Langley has not made a substantial showing of the denial of his constitutional rights, I decline to issue a COA.

An Order follows, consistent with this Memorandum.

Date: November 30, 2022  /s/
Ellen L. Hollander
United States District Judge

---

[6] The denial of a COA by the district court does not preclude a petitioner from seeking a COA from the appellate court.